UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-00054-RJC

| COSHA CUNNINGHAM, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 11), and Defendant's Motion for Summary Judgment, (Doc. No. 13). The motions are ripe for adjudication.

I. BACKGROUND

A. Procedural Background

Cosha Cunningham ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of her social security claim. Plaintiff filed an application for Disability Insurance under Title II of the Social Security Act ("SSA") on December 17, 2014. (Doc. Nos. 10 to 10-1: Administrative Record ("Tr.") at 69.) Her application was denied first on June 30, 2015, (Tr. 69), and upon reconsideration on September 20, 2015, (Tr. 79). Plaintiff timely filed a request for a hearing on September 28, 2015, (Tr. 100), and an administrative hearing was held by an administrative law judge ("ALJ") on June 20, 2017, (Tr. 121). Following this hearing,

the ALJ found that Plaintiff was not disabled under the SSA. (Tr. 14–31.) Plaintiff requested a review of the ALJ's decision, but on December 3, 2018, the Appeals Council denied Plaintiff's request for review. (Tr. 1–6.) Having exhausted her administrative remedies, Plaintiff now seeks judicial review of Defendant's denial of her social security claim in this Court.

B.  Factual Background

The question before the ALJ was whether Plaintiff was disabled under sections 216(i) and 223(d) of the SSA. (Tr. 17.) To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the SSA.[1] Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff alleges that her disability began on August 1, 2012 due to physical impairments. (Tr. 161.)

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 27.) In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. The Fourth Circuit has described the five-steps as follows:

> [The ALJ] asks whether the claimant: (1) worked during the purported period of disability; (2) has an impairment that is appropriately severe and meets the duration requirement; (3) has an impairment that meets or equals the requirements of a listed impairment and meets the duration requirement; (4) can return to her past relevant work; and (5)

---

[1] Under the SSA, 42 U.S.C. § 301 et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

2

if not, can perform any other work in the national economy.

Radford v. Colvin, 734 F.3d 288, 290–91 (4th Cir. 2013) (paraphrasing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant has the burden of production and proof in the first four steps. Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). However, at the fifth step, the Commissioner must prove that the claimant is able to perform other work in the national economy despite his limitations. See id.; see also 20 C.F.R. § 416.960(c)(2) (explaining that the Commissioner has the burden to prove at the fifth step "that other work exists in significant numbers in the national economy that [the claimant] can do").

In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 26–27.) In reaching his decision, the ALJ first concluded at steps one through three that Plaintiff was not employed, that she suffered from severe physical impairments,[2] and that her impairments did not meet or equal any of the impairments listed in the Administration's regulations. (Tr. 19–20.) Therefore, the ALJ examined the evidence of Plaintiff's impairments and made a finding as to Plaintiff's Residual Functional Capacity ("RFC"). In pertinent part, the ALJ found that Plaintiff

> has the [RFC] to perform sedentary work . . . except she can occasionally climb ramps or stairs and never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, or crawl. The claimant can frequently handle, finger, and feel with the right upper extremity. She must avoid concentrated exposure to extreme cold and excessive vibration.

---

[2] The ALJ determined that Plaintiff suffered from the following severe impairments: status-post right tibia fracture and repair and status-post right posterior interosseous nerve damage and repair. (Tr. 19.)

3

(Tr. 21.) Having established Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform the work in which she had previously been employed. (Tr. 25.) The ALJ thus proceeded to the fifth and final step of the process: determining whether, given the limitations embodied in Plaintiff's RFC, Plaintiff could perform any work that existed in significant numbers in the national economy. (Tr. 26–27.) To make that determination, the ALJ relied on the testimony of a Vocational Expert ("VE"). The VE testified that Plaintiff could perform two jobs that existed in significant numbers in the national economy: "Inspector, woodworking"[3] and "cuff folder."[4] (Tr. 26.) According to the Dictionary of Occupational Titles ("DOT"), all of these jobs involve "sedentary work." The ALJ accepted the VE's testimony and concluded that Plaintiff's impairments did not prevent her from working; consequently, Plaintiff's application for Title II benefits was denied. (Tr. 26–27.)

## II. STANDARD OF REVIEW

The Court must decide whether substantial evidence supports the final decision of the Commissioner and whether the Commissioner fulfilled her lawful duty in her determination that Plaintiff was not disabled under the SSA. See 42 U.S.C. §§ 405(g), 1382(c).

The SSA, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and

---

[3] DOT 669.687-014.
[4] DOT 685.687-014.

4

(2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the SSA provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and [do]ing more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again or substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff contends that remand is warranted for two reasons: (1) in assessing Plaintiff's RFC, the ALJ failed to explain his conclusion that Plaintiff can frequently handle, finger, and feel with the right upper extremity, and (2) the VE's testimony does not constitute substantial evidence to support the ALJ's step-five determination that Plaintiff's RFC allows her to perform work that exists in significant numbers in the national economy. The Court agrees that remand is appropriate based on the second allegation of error.

As discussed above, at step five of the sequential evaluation process, "the ALJ determines whether the claimant—given her RFC, her age, her education, and her prior work experience—can do any other work that exists in significant numbers in the national economy." Thomas v. Berryhill, 916 F.3d 307, 310 (4th Cir. 2019) (quotation marks omitted). The Commissioner bears the burden of proof at this step. Id. The ALJ may rely on a VE to determine the availability of given positions in the national economy. Pearson, 810 F.3d at 207.

Plaintiff contends that the VE's testimony does not provide substantial evidence to support the ALJ's conclusion at step five because in determining the number of jobs in the national economy that Plaintiff can perform, the VE used data from the Bureau of Labor Statistics ("BLS") on numbers of jobs for broader categories than the DOT and did not adjust those numbers to reflect the number of jobs for the specific DOT positions identified by the VE.

It is not clear which BLS publication the VE relied on here, but courts have

6

addressed a VE's reliance on the Occupational Employment Quarterly ("OEQ"), which uses BLS data to provide the number of jobs by Census code. Boston v. Colvin, No. 4:14-cv-206-D, 2016 U.S. Dist. LEXIS 21874, at *29–30 (E.D.N.C. Feb. 1, 2016), adopted by 2016 U.S. Dist. LEXIS 21868 (E.D.N.C. Feb. 23, 2016). Census codes are broader than DOT codes. Id. at *30. "While it is clear that the OEQ does not provide the number of jobs in any particular DOT category, courts have consistently upheld an ALJ's reliance on a VE's proposed job numbers derived from OEQ data when the VE further adjusts the number of jobs in the broader OEQ category to a number that reflects the number of jobs for the cited DOT occupation and provides a reasonable basis for having done so." Id. at *32–35 (collecting cases). In other words, "despite the lack of specificity of the OEQ job incidence data, it is possible for a VE to make a reasonable adjustment to reflect DOT-specific job numbers by calling on other available sources as well as professional experience." Id. at *35. At the same time, however, a VE's reliance on OEQ data is concerning when "the VE fails to reasonably adjust or . . . make any adjustment at all in the number of jobs reported by the OEQ for a Census code to reflect the number of jobs for a specific DOT job included within that Census code." Id. at *35–36.

Here, the VE testified that a person of Plaintiff's age, education, work experience, and RFC could perform the DOT positions of woodworking inspector and cuff holder. (Tr. 55.) The VE further testified that there are 472,000 woodworking inspector jobs and 419,000 cuff folder jobs in the national economy. (Tr. 55.) The VE's testimony as to how he determined those numbers is as follows:

> Q. And the job numbers that you provided, what source of data are those from?
>
> A. Bureau of Labor Statistics.
>
> Q. Okay. And Bureau of Labor Statistics provides job numbers for broader categories, not by DOT code, but broader category SOC code or QES code, correct?
>
> A. Yes.
>
> Q. Did you -- do you use anything to reduce it like a computer program or anything like that?
>
> A. We're -- as VE's [sic], we're not allowed to use those types of computer programs for this Job Browser SkillTRAN.
>
> . . . .
>
> Q. Okay. So, are the job numbers are they specific to the DOT code you provided or are they part of that broader category of similar types of jobs?
>
> A. They're part of that broader category.
>
> Q. Okay.
>
> A. Bureau of Labor Statistics does not assign define DOT data. When we use those numbers, we have to assign the DOT's [sic] to the job or occupation that most --
>
> Q. Okay.
>
> A. -- represents what that person does.

(Tr. 57–58.) Although it is unclear which BLS publication the VE relied on, this testimony makes clear that he relied on BLS data for broader categories than the specific DOT occupations. Thus, as when a VE relies on data from the OEQ, the VE here should have reduced or otherwise reasonably adjusted the data to reflect the number of jobs for the specific DOT occupations the VE identified. See Vandermark

v. Colvin, No. 3:13-cv-1467, 2015 U.S. Dist. LEXIS 30376, at *49–50 (N.D.N.Y. Jan. 7, 2015) ("Courts balk . . . when [VEs] provide incidence testimony based on broad occupation groupings without accounting for the fact that such groupings include more jobs tha[n] a particular claimant can perform, without adjusting those incidence numbers accordingly or when they otherwise inject meaningful uncertainty as to how adjustments are made."). It is entirely unclear whether the VE reduced or adjusted the numbers reported by the BLS and, if so, the methodology used. As a result, the VE's testimony does not constitute substantial evidence to support the ALJ's step-five determination, and this matter must be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings. Boston, 2016 U.S. Dist. LEXIS 21874, at *41–42 (concluding that the VE's testimony did not constitute substantial evidence to support the ALJ's step-five determination where the VE "made no attempt to reduce the total number of jobs in the broader Census categories to reflect the number of jobs in the specific DOT occupations she identified"); Saffioti v. Comm'r of Soc. Sec., No. 2:17-cv-143-FtM-99CM, 2019 U.S. Dist. LEXIS 10802, at *28 (M.D. Fla. Jan. 7, 2019) (concluding that the VE's testimony did not constitute substantial evidence to support the ALJ's step-five determination where it was unclear whether the VE appropriately reduced the job numbers taken from the BLS) adopted by 2019 U.S. Dist. LEXIS 59638 (M.D. Fla. Apr. 8, 2019); Gracz v. Berryhill, No. 16-cv-4099, 2017 U.S. Dist. LEXIS 55683, at *17 (N.D. Ill. Apr. 12, 2017) (concluding that the ALJ's step-five determination lacked sufficient evidentiary support where the record was devoid as to the VE's methodology for reducing the job

numbers taken from the BLS).

IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 13), is **DENIED**;

3. This matter is **REMANDED** for further proceedings consistent with this Order; and

4. The Clerk of Court is directed to close this case.

Signed: January 23, 2020

Robert J. Conrad, Jr.
United States District Judge